[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On June 4, 1997, the Redevelopment Agency for the City of Hartford ("agency"), acting on behalf of the City of Hartford, filed a statement of compensation, pursuant to General Statutes § 8-129, for property owned by Ana Eguiguren Rozas. The property consisted of land and a building located at the intersection of Grand Street and Lawrence Street in Hartford known as 113-115 Lawrence Street.
In the statement of compensation, the agency stated that the compensation to be paid for the subject property was $25,000, and that this sum was being deposited with the clerk of the superior court pursuant to General Statutes § 8-130. On July 11, 1997, after notice pursuant to General Statutes § 8-129, the clerk issued a certificate of taking. Thereafter, the defendant Rozas filed an appeal and application for review of the statement of compensation.
The subject property was a three story brick building containing two retail stores on the ground level and four two-bedroom apartments. Two apartments were located on the second floor and two apartments were located on the third floor of the subject' building. The building contained approximately 5,214 square feet. The land upon which the building was located measured approximately 3,010 square feet. The subject was located in an R-3 zone. An R-3 zone permits single family and multi-family residences. The subject property has available to it public water, sanitary sewers, gas and electricity. The building on the property has been demolished.
The defendant's building manager, Edward Foden, testified at trial that the subject property was income producing until 1995 when the agency condemned the buildings adjacent to the subject and demolished these buildings. Until 1995, apartments at the subject property rented for $425 per month and the two stores for $600 per month. It was common knowledge in 1995 that the agency was going to condemn the subject property. From 1995 to the date of the filing of the certificate of compensation, the defendant's property became vacant due to the deteriorating conditions in the area. Drugs were being sold out of buildings acquired by the city CT Page 6726 in the area which had not yet been demolished. Vandalism was rampant. After March 1995, the defendant's attempts to rent the subject property were fruitless because of the neighborhood conditions. The defendant purchased the subject property on April 15, 1987 for $145,000. Two years later, on October 1, 1989, the city valued the property for assessment purposes at a fair market value of $164,500. Up to of the date of taking, the defendant had been taxed based upon the valuation of $164,500. The agency claims that as of July 1997, the subject property was worth only $25,000, over an 85% decrease in value.
The agency's valuation is based on a highest and best use with the property used for commercial use on the first floor and two residential apartments on both the second and third floors. The agency's appraiser noted that under present zoning regulations, the subject land could not be built upon, and therefore its highest and best use as though vacant would be to assemble it with abutting property. On the date of taking, retail use of the ground floor of the subject property was a nonconforming use in the R-3 zone.
We agree with both appraisers that the highest and best use of the subject as improved was as retail/apartment units.
The plaintiff agency's appraiser valued the property as of July 14, 1997, and the defendant's appraiser valued the property as of June 4, 1997. Using the income approach, the defendant's appraiser gave us an abbreviated review of rental data in the market of $425 per month for average rents and $9.00 per square foot for rental of retail space. Using an effective gross income of $29,580 and a total operating expense of $19,853, the defendant's appraiser found a net operating income of $9,727, which is capitalized at a rate of 10% to arrive at a value of $97,270.
The agency's appraiser used the comparable sales approach to find value. The agency's appraiser used comparable sales of property which were, for the most part, in similar condition to the subject as of July, 1997. These sales ranged from $18,900 to $30,000.
"The function of the trial court in condemnation cases is to determine as nearly as possible the fair equivalent in money for the property taken. . . . Although the market value of the taken property is ordinarily the most appropriate measure of fair CT Page 6727 compensation . . . [the courts have] long held that other measures may be appropriate when the fair market value measure of damages does not fully compensate the owner. . . .[T]he question of what is just compensation is an equitable one rather than a strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken." (Citations omitted; internal quotation marks omitted.) Alemany v. Commissioner of Transportation,215 Conn. 437, 444, 576 A.2d 503 (1990).
Given the climate that existed in the area of the subject property on the date of the issuance of the certificate of taking, if we were to realistically value the subject property on that date, the compensation paid by the agency of $25,000 would be adequate. However, fairness dictates that we go back to 1995 when the subject was capable of producing income in order to determine the value of the subject property. We rely on Citino v.Redevelopment Agency of the City of Hartford, 51 Conn. App. 262,721 A.2d 1197 (1998). Although the agency filed the statement of compensation in June of 1997, in effect, its actions in 1995 produced the condition in which the defendant found the property in 1997. In a real sense, the agency condemned the defendant's property in 1995 when it condemned the surrounding buildings. This is a case where something analogous to an inverse condemnation preceded the actual condemnation by approximately two years. We cannot penalize the property owner because the actions of the agency caused the defendant's property to be unproductive. When a redevelopment agency fails to implement the development plan within a reasonable amount of time and allows the neighborhood to deteriorate to the point where there is little value left to the subject building, a de facto inverse condemnation has occurred. Id., 284. As in Citino, the actual date of the taking is impossible to ascertain in that deterioration is a gradual process. Id. circumstances of this case is to look at the market in 1995. The defendant's property manager noted that in 1995 the defendant could rent the apartments for $425 per month and rent the two retail units for $600 per month. The manager noted that the occupancy rate of the apartments was generally good. We basically rely on the analysis of the defendant's appraiser using the income approach. However, we view the vacancy factor of 15% used by the defendant's appraiser to be too low given the conditions developing in the neighborhood even in 1995. We view a vacancy rate of 25% to be more in line with the market conditions at that time. After CT Page 6728 reviewing the analysis of the defendant's appraiser in selecting a capitalization rate of 10%, we consider a capitalization rate of 12% to be more appropriate in light of the market conditions in 1995. Using these modified figures, we arrive at a net operating income of $6,373, which, when capitalized at a rate of 12%, results in a fair market value of $53,108.33. We find that this amount is appropriate compensation for the subject property under the unique facts of this case.
Accordingly, judgment may enter in favor of the defendant for $53,108.33. The $25,000 deposited with the court shall be paid to the defendant, and the agency is ordered to pay the defendant the balance of $28,108.33. We also award costs of court in favor of the defendant pursuant to General Statutes § 8-133, including the fee for the defendant's appraisal of $500, plus a reasonable fee for the appraiser's testimony.
Arnold W. Aronson Judge Trial Referee