[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action by the plaintiff landlord against the defendant tenant for breach of lease for retail space within the plaintiff's shopping center.
The original lease was effective August 22, 1994 for a period of five years from September 1, 1994 to August 31, 1999. The defendants were engaged in the retail gift and ladies clothing store business with some emphasis on teenage and children's clothing. During the term of this lease the plaintiff rented to a retailer, doing business under the name "Crazy Moon", a store diagonally across the small plaza from the defendant's store. The Crazy Moon store was an active and aggressive CT Page 1830-cb competitor of the defendants. It carried the same items as were carried by the defendants. Some of the items carried by Crazy Moon were being sold by Crazy Moon at below cost. Crazy Moon depreciated the defendants' sales promotion by displaying a sign saying, "Don't be fooled by false sales."
The defendants' business had fallen on hard times. The defendants were convinced that their inability to have a healthy business was caused directly by the intense competition from Crazy Moon. In the spring of 1999, as the lease was going to run out on August 31, 1999, the plaintiff approached the defendants to seek the defendants' renewal of the lease. Discussions took place between Mr. Robert Schwartz, the plaintiff's managing partner, and Mr. John Lavery. Mr. Lavery is father of the defendant Louisa and the father-in-law of the defendant John.
Mr. Lavery is in the retail business. He has owned or managed retail stores or departments in such stores for fifty years. He acted as a general advisor to Mr. and Mrs. Mayock. Mr. Lavery made it known that Crazy Moon was hurting the defendant's business. Mr. Schwartz told Mr. Lavery that Crazy Moon was not going to renew its lease. He told Mr. Lavery that Crazy Moon was leaving at the end of September or October.
On the basis of the information given by Mr. Schwartz that Crazy Moon was leaving in September or October the defendants agreed to renew the lease. The time of Crazy Moon leaving was critical as a business of this nature, selling these types of goods at retail, makes approximately fifty percent of its profits during the Christmas season. The defendants had increased their purchases of inventory in anticipation of a competition-free Christmas in the Shopping Center, as would have been the case if Crazy Moon's lease had in fact run out and it had departed in September or October. Hence the double impact of less than anticipated sales and increased expense for inventory.
Under the terms of the lease Crazy Moon's lease allowed it to go to January rather than September or October. The defendants, because of the double impact stated above, ran out of money and had to leave the premises at the end of January.
The defendants on June 30, 1999 signed a three-year extension of the lease from September 1, 1999 to August 31, 2002, with an option to cancel at the completion of the first year. The defendants would not have signed the extension of lease or remained in occupancy after August 31, 1999 had it not been for the representation of Mr. Schwartz that Crazy Moon was going to depart in September or October 1999. The plaintiff leased the CT Page 1830-cc premises to another party as of June 1, 2000. The defendant departed as of January 31, 2000 having paid all the "rent" for its months of occupancy, September 1999 through January 31, 2000, the rent being $1,030 per month.
The plaintiff also claims that in addition thereto there is owed an amount of $149.91 for water charges for 7/01/99 through 12/31/99, an adjustment of operating expenses, taxes and insurance for 1999 of $278.10; a late fee of $64.37 for "November rent"; and a $54.37 charge for "Oct. Previous Balance Due". The plaintiff also claims attorney fees under the terms of the lease renewal.
The defendants, by first Special Defense claim that the plaintiffs "agreed" that Crazy Moon would leave the shopping center when their term began, and failure to fulfill that agreement relieved them of their obligations under the lease, and that the defendant entered into the renewal in specific reliance upon the plaintiff's promise. The second Special Defense claims fraudulent inducement because of statements made "concerning tenant mix and occupancy in the shopping center." A third Special Defense claims a breach of the covenant of quiet enjoyment in the lease because a "kick boxing studio" was making excessive noise and causing excessive vibrations. vibrations. The court finds for the plaintiff on the Third Special Defense, as the defendant has failed to prove a breach of the covenant of quiet enjoyment.
The defendants' claims that the doctrine of Equitable Estoppel prevents the landlord from enforcing its damage claims arising out a renewed lease in this case. For estoppel to be applicable two elements must be proved.
 The party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury.
Lunn v. Tokeneke Assn., Inc., 227 Conn. 601, 607 (1993).
This court finds that the plaintiff knew the cause of concern of the defendants that the continuing competition of the business Crazy Moon was having severe economic consequences as concerns the defendants, and that the defendants would be reluctant to sign the lease renewal unless that competition ceased. The court finds that the plaintiff, the landlord of the shopping center, certainly must have known the impact of the CT Page 1830-cd Christmas Season on the amount of traffic, business and profit of a retail lessee such as this, which not surprisingly Mr. Lavery testified would be about 50% of yearly profit. The court further determines that the representation as to Crazy Moon's leaving was made to induce the defendants to renew their lease, which renewal the defendants signed to their prejudice.
The facts of this case further compel a conclusion of negligent misrepresentation.
 One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
Citino v. Redevelopment Agency, 51 Conn. App. 262, 273 (1998).
The court cannot conclude that the plaintiff intentionally misrepresented the subject information to the defendants. Such conclusion would have to be based on the high standard of "clear and convincing proof." However, it is abundantly clear that the statement of the plaintiff was undoubtedly negligently made and the defendants relied upon that false information in signing the lease renewal. "It is sufficient that the representations contained false information . . ." Citino, supra p. 274.
It is clear that the Renewal of Lease entered into by the defendants, precipitated by such negligent misrepresentation, is unenforceable. It does not form a contractual basis for the business relationship of the parties. The defendants paid the amounts that were called for, equivalent to the lease rental amounts, which are able to be retained by the plaintiff for use and occupancy during the months that the defendants actually occupied the premises.
The plaintiff claims, in the complaint, that it is owed sums arising out of past occupancy. Specifically $149.91 for water charges for 7/01/99 through 12/31/99; and an adjustment of 1999 operating expenses, tax and insurance of $278.10. The court determines that these are proper use and occupancy charges for the time in occupancy and that equity would mandate that the defendant-occupant pay their fair share of these (common to occupants) charges. These charges amount to $428.01. Claims for late CT Page 1830-ce charges are lease bound and hence are not allowed.
The plaintiff claims attorney fees arising out of the Renewal of Lease, incorporating paragraph 11 of the original lease, for the collecting of rent. The court has concluded that the Renewal of Lease is unenforceable, hence the provision of the lease is inapplicable. The American Rule applies, where each side pays its own attorney's fees. The pleadings do not deal with the security deposit. The court leaves the parties to their remedies as to any such claims.
The court finds for the plaintiff in the amount of $428.01 for the common charges and finds the issues, excepting said $428.01 for the defendants.
L. Paul Sullivan, J.