[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Joel Corman and his wife Paula, were seeking to purchase a yacht for their own personal use. Through a multiple listing service, they became aware of one that was being offered for sale by Brewer Yacht Sales of Stratford, Connecticut. They contacted one Kevin Keogh, the broker who had listed this particular yacht for sale.
On June 1, 1996, they met with Kevin Keogh at Brewer Yacht Sales, to look at this particular boat. It was a 34 foot trawler built in 1989 by Marine Trading International. On that date, after viewing the boat, they entered into an agreement to purchase the same for $70,000.00. The sale, however, was subject to a survey and sea trial.
Being foreign to the area, the Cormans sought the advice of Kevin Keogh, to obtain a marine surveyor to examine the boat. Mr. Keogh supplied them with a list of brokers but recommended the defendant, Francis Russo. As a result of this recommendation, the Cormans engaged Mr. Russo to conduct the survey.
The survey took place at the boatyard on June 5, 1996. On June 4, 1996, prior to the survey, the Cormans faxed a note to Russo setting forth some of their concerns. They listed a crack on the outside of the flybridge where it attaches to the main cabin; the gouge in the teak inside the main cabin; the broken window above the galley; and the poor condition of the external teak. They also asked him to evaluate the electronics on the boat. CT Page 503
The survey and sea trial were conducted on June 5, 1996. Present on the boat during the sea trial were the Cormans, Russo and Keogh. There is some dispute as to the length of the trial, but neither was for any length of time. Specific reference was made by Mr. Corman to Mr. Russo regarding the water stain on the teak veneer in the well of the V berth; the broken window above the galley; the crack on the outside of the flybridge where it attaches to the main cabin. Mr. Russo responded that they were not a problem. He did not at the time of his survey indicate any problems that might exist that would affect the seaworthiness of the boat. He indicated that the boat was in excellent condition and worth considerably more than the purchase price of $70,000.00.
On June 6, 1996, Russo mailed a report to the Cormans indicating the condition of the boat to be very good, mentioning only the cracked side window and the crack around the side handle of the port galley window.
Mr. Russo testified that he was a part-time marine surveyor. He did not disclose to the Cormans that he had never before surveyed a boat similar to the subject.
The Cormans agreed to the purchase and the boat was delivered to them during the summer of 1996. They found the radios and compasses were not in good working order. They had trouble with the engine stalling repeatedly. The problems they encountered limited them in the use of the boat, causing them in September to have the board removed from the water and placed in drydock.
During the winter of 1997, Mr. Corman was informed by Mr. Anderson at his boatyard that the boat had extensive problems; that the entire front deck and a large portion of the flybridge were rotten; that there were problems with the top deck caving in and bowing out the sides of the boat; that there were problems on the cutlass bearing and shaft, which was pitted and the bearing had to be replaced. None of this had been brought to their attention by Mr. Russo.
Upon the receipt of this information, Mr. Corman CT Page 504 sought a second opinion and engaged the services of Paul Haley of Captain G. W. Full and Associates to conduct a survey. Mr. Haley's report confirmed the findings of Mr. Anderson.
Mr. Corman then hired one Ralph Kershaw to conduct a detailed survey of the boat, setting forth what repair work was needed. Mr. Kershaw inspected the boat on April 30, 1997 and sent a report of his findings, entitled "Condition Survey" to the Cormans on May 22, 1997.
Mr. Kershaw is a marine surveyor of some 32 years' experience and totally familiar with the Marine Trawler. His testimony disclosed that the subject boat had serious problems as to its seaworthiness and that these problems were longstanding and that anyone surveying this boat should have been aware of them and not have described the same as being in very good condition.
Kershaw, in his examination, found that there was a delamination and a fracture at the base of the rudder skeg. There were rust stains and the separation was clearly an old one. He took moisture readings and percussion soundings, the latter of which the defendant's expert failed to perform.
He further disclosed that there was a common problem with the decks of the Marine Trawler. He testified that teak decks are a major problem area. Hammer soundings found the teak deck to be loose against the subdeck and that this was an ongoing problem for seven or eight years of water intrusion into the deck. He found this problem to be very obvious, one that any marine surveyor should have picked up.
His observation of the staining in the V berth area occurred over a period of three or four years. In examining the chain locker looking for the source of the staining, he observed deteriorated plywood. Moisture readings indicated a saturated plywood core. In order to determine the condition of the deck care, it is necessary to take moisture readings below deck. The readings disclosed a major portion of the aft end of the cockpit and the subdeck were completely saturated. Hammer testing found the plywood to be in the middle CT Page 505 stages of delamination and deterioration. This condition occurred over a period of three to five years prior to his inspection. His testimony disclosed that, once the core of the deck becomes delaminated, the only solution is to replace it. The court finds that the boat could not be safely operated without making the necessary repairs.
The defendant claims that the caving of the deck and the bulging were caused by the installation of a new mast that was not of the proper specifications. This could not have been since Kershaw's inspection occurred while the mast was in a down position exerting no pressure upon the deck.
Kershaw found the value of the boat at the time of its purchase and the condition it was in to be $50,000.00 and that the cost of repairs would be $25,022.62. These repairs were accomplished at that figure.
The plaintiff claims that they were fraudulently induced by the defendant to purchase the boat. "The essential elements of a cause of action in fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other part to act on it; and (4) the other party did so act upon that false representation to his injury. . . . All of these ingredients must be found to exist; and the absence of any one of them is fatal to a recovery. . . . Additionally, [t]he party asserting such a cause of action must prove the existence of the first three of [the] elements by a standard higher than the usual fair preponderance of the evidence, which higher standard we have described as `clear and satisfactory' or clear, precise and unequivocal." Citino v. RedevelopmentAgency, 51 Conn. App. 262, 275-76, 721 A.2d 1197 (1998) (citations omitted; internal quotation marks omitted).
The court finds that the plaintiff has failed to sustain that higher degree of proof necessary to sustain the first three elements of fraud and therefore finds for the defendant on that count.
As for the second count which alleges a breach of CT Page 506 contract that the contract to perform the marine survey was an oral one, the plaintiff did submit a faxed note to the defendant setting forth certain areas of concern. The defendant's response was that they were no problem and his survey report indicated the boat to be in "very good" condition and had a value of $97,500.00. (See Defendant's Exhibit 1). The defendant failed to properly assess the Cormans' areas of concern in violation of his oral agreement to survey the boat and give the Cormans a realistic analysis of the condition of the vessel and thus would permit the Cormans to make a studied decision.
"A party injured by a breach of contract may, under certain circumstances, recover the cost of his reliance as part of his expectation experience." West Haven SoundDevelopment v. West Haven, 201 Conn. 305, 320 (1986) (internal citations omitted)
"The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been had the contract been performed." Fullerton v. McGowan,6 Conn. App. 624, 630 (1986).
On the second count, the court finds the issues for the plaintiff.
The third count rests in malpractice. "In every professional malpractice action, the plaintiff is required to prove that (1) the defendant was obligated to conform to a recognized standard of care; (2) the defendant deviated from that standard; (3) the plaintiff suffered some injury; and (4) the defendant's act in departing from the standard of care caused the plaintiff injury." Shegog v. Zabrecky, 36 Conn. App. 737 (1995) (internal citations omitted)
It is obvious to the court that the water intrusion underlies all of the problems found to exist with the subject, a condition the defendant should have found during his survey and reported the same to the Cormans. Mr. Kershaw, the plaintiffs' expert, found this condition to be very obvious to any marine surveyor. CT Page 507
The court finds for the plaintiffs on counts 2 and 3; that the boat was not in seaworthy condition when purchased; and that Mr. Russo should have been aware of the boat's condition at the time of his survey and so advised the Cormans.
The Marine Trader was not worth the $70,000.00 paid by the Cormans nor was it worth the $97,500.00 as alleged by the defendant. The boat at the time of its purchase was worth $50,000.00.
In order to make the Trawler seaworthy, the Cormans were required to spend $25,022.26. The plaintiffs, therefore, incurred damages in the amount of $45,022.26. Judgment may enter in accordance with the above.
The Court
By Curran, J.