ERNEST C. DeLucia *v.* J. William Burns,
Commissioner of Transportation
(4990)

Dupont, C. J., Borden and Spallone, Js.

Argued April 8—decision released July 7, 1987

*Benson A. Snaider,* for the appellant (plaintiff).

*Michael J. Lombardo,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellee (defendant).

SPALLONE, J. This is an appeal from the granting of the defendant's motion for summary judgment in a condemnation action. The dispositive issue is whether, after a landowner has breached a voluntary agreement to convey land to the highway commissioner for a highway project, the commissioner, in a subsequent condemnation action to acquire the land, may limit the damages to the amount agreed to by the parties in the sales contract. We find that, under these circumstances, the landowner is entitled to receive as just compensation for the taking no more than he originally agreed to in the sales contract. Accordingly, we find no error.

The defendant commissioner of transportation and the plaintiff landowner entered into a written agreement entitled "land payment voucher" wherein the plaintiff agreed to convey to the defendant approximately 6.2 acres of land needed for the construction of a highway. The parties agreed that the commissioner would pay the plaintiff $102,000 for the property. Pursuant to General Statutes § 13a-73 (c),[1] *Hon. Philip R.*

---

[1] General Statutes § 13a-73 (c) provides in pertinent part: "The commissioner may purchase any land and take a deed thereof in the name of the state when such land is needed in connection with the layout, construction, repair, reconstruction or maintenance of any state highway or bridge, and any land or buildings or both, necessary, in his opinion, for the efficient accomplishment of the foregoing purpose, provided any purchase of such land or land and buildings in an amount in excess of the sum of fifteen thousand dollars shall be approved by a state referee."

*Pastore,* state trial referee, approved the sale, as did the state properties review board pursuant to General Statutes § 13a-73 (h).[2]

On January 18, 1984, the scheduled date for the closing, the plaintiff refused to convey the property, claiming that he considered the agreed-upon purchase price of $102,000 to be inadequate. The defendant needed possession of the property to prevent delays in the highway construction project. The defendant, therefore, condemned the property under the provisions of General Statutes § 13a-73 (b)[3] and filed a notice of condemnation and assessment of damages in the amount of $102,000. That amount was deposited with the clerk of the Superior Court and the plaintiff withdrew it in accordance with General Statutes § 48-11.[4] The plain-

---

[2] General Statutes § 13a-73 (h) provides in pertinent part: "All sales or exchanges of surplus property by the department of transportation and matters dealing with the initial acquisition of any existing mass transit system or the purchase or sale of properties acquired in connection with any state highway system or mass transit system shall be subject to review and approval of the state properties review board . . . ."

[3] General Statutes § 13a-73 (b) provides in pertinent part: "The commissioner may take any land he finds necessary for the layout, alteration, extension, widening, change of grade or improvement of any state highway or for a highway maintenance storage area or garage and the owner of such land shall be paid by the state for all damages and the state shall receive from such owner the amount or value of all benefits resulting from such taking, layout, alteration, extension, widening, change of grade or other improvement. . . . The assessment of such damages and of such benefits shall be made by the commissioner and filed by him with the clerk of the superior court in the judicial district in which the land affected is located, and such clerk shall give notice of such assessment to each person having an interest of record therein by mailing to each a copy of the same, postage prepaid, and, at any time after such assessment has been made by said commissioner, the physical construction of such layout, alteration, extension, widening, maintenance storage area or garage, change of grade or other improvement may be made."

[4] General Statutes § 48-11 provides in pertinent part: "Whenever the state takes property under any provision of the general statutes or any special act, and the state and the owner or owners of such property or of any interest therein are unable to agree on the amount to be paid as just compensation for such property, the taking authority shall file, with the clerk of the

tiff thereafter filed an appeal under General Statutes § 13a-76[5] claiming that he was aggrieved because the damages assessed by the defendant were inadequate.

On February 3, 1986, after the pleadings were closed, the defendant filed a motion for summary judgment supported by extensive documentation,[6] including a comprehensive affidavit. The plaintiff filed a brief in opposition to the defendant's motion for summary judgment, but did not file a counteraffidavit or any other documentation before the date of the hearing on the motion for summary judgment. On the day of the summary judgment hearing, the plaintiff attempted to file an affidavit in opposition to the motion. The court, however, refused to consider this affidavit, finding that it

court to which a petition for the assessment of just damages has been preferred, a statement of the sum of money estimated by such authority to be just compensation for the property or interest therein taken. Such sum shall be deposited in said court to the use of the person or persons entitled thereto and notice of such deposit shall be given to such person or persons by such clerk."

[5] General Statutes § 13a-76 provides in pertinent part: "Any person claiming to be aggrieved by the assessment of such special damages or such special benefits by the commissioner may, at any time within six months after the same has been so filed, apply to the superior court for the judicial district within which such land is situated or, if said court is not in session, to any judge thereof for a reassessment of such damages or such benefits so far as the same affect such applicant . . . ."

[6] The supporting documents filed with defendant's motion for summary judgment were:

Exhibit A - Affidavit.

Exhibit B - Land Payment Voucher.

Exhibit C - Application to Court.

Exhibit D - Referral to State Referee.

Exhibit E - Transcript of Referee Hearing.

Exhibit F - Memorandum of Decision 12/16/83.

Exhibit G - Memorandum dated 1/18/84: Cichowski.

Exhibit H - Notice of Condemnation 2/15/84.

Exhibit I - Appeal Filed 5/25/84.

Exhibit J - Transcript of Deposition: E. DeLucia.

Exhibit K - Transcript of Deposition: J. Cichowski.

Exhibit L - Transcript of Deposition: D. Leavitt.

Exhibit M - Request for Admission with Responses.

was submitted for the purpose of delay, was made in bad faith, was not based on the plaintiff's personal knowledge and was contrary to the sworn statements made by the plaintiff at a deposition. State trial referee, *Hon. Harold J. Mulvey,* in his capacity as the trial court, filed a detailed memorandum of decision granting the defendant's motion for summary judgment. From this decision the plaintiff has appealed.

Initially, we must determine whether the court was correct in holding that the vehicle of summary judgment was available to the defendant in a condemnation action under General Statutes § 13a-76. Summary judgments may be utilized in those administrative appeals that are enumerated in Practice Book § 257 (d). Included in the administrative appeals listed in this section is "any other appeal in which the parties are entitled to a trial de novo." Practice Book § 257 (d) (5). We agree with the trial court that an appeal under General Statutes § 13a-76 is a trial de novo, thereby allowing the court to consider the defendant's motion for summary judgment.

We next address the plaintiff's claims contesting the validity of the sales contract. The trial court found that after the contract was executed by both parties, and approved by a state trial referee and the state properties review board, the plaintiff's interest was, by virtue of the doctrine of equitable conversion, an interest in the proceeds of the sale rather than an interest in the realty. Implicit in this conclusion is the finding that the land payment voucher was a valid purchase and sales agreement between the parties.

The plaintiff claims that summary judgment was inappropriate on this issue because his counteraffidavit, filed on the day of the summary judgment hearing, raised a factual question regarding the plaintiff's intent to enter into a binding contract. The trial

referee, however, refused to consider the plaintiff's affidavit. While the plaintiff claims for the first time in his reply brief that the court erred in refusing his affidavit, we will not review this claim because the appellee was not given a proper opportunity to respond to this argument in its brief. See Practice Book § 4013 (a); *R.A. Civitello Co.* v. *New Haven,* 6 Conn. App. 212, 217 n.5, 504 A.2d 542 (1986).[7]

The plaintiff also claims that the land purchase voucher failed to comply with the statute of frauds because it did not describe the property with sufficient certainty or provide a time for performance. Because this claim was not raised below, we will not review it here. Practice Book § 4185; *Knight* v. *Bourbeau,* 194 Conn. 702, 704, 485 A.2d 919 (1984). We note that the land purchase voucher does not contain any deficiencies on its face that would raise any issue of material fact as to its validity under the statute of frauds.[8]

We must now determine whether the trial court correctly concluded that the purchase price agreed to by the parties in the sales contract was just damages for the plaintiff in the condemnation proceeding. "Under article first, § 11, of the Connecticut constitution, no property shall be taken for a public use without just compensation. This means a fair equivalent in money for the property taken from the condemnee as nearly

---

[7] We note that when the plaintiff did raise this claim, he did no more than make a bare assertion that the failure to consider the affidavit was error, and provided no legal authority or argument to support his claim. Such a claim thus evades meaningful appellate review. See *McGaffin* v. *Roberts,* 193 Conn. 393, 399 n.6, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985); *Goold* v. *Goold,* 11 Conn. App. 268, 527 A.2d 696 (1987).

[8] The land payment voucher described the property by reference to a map apparently prepared in connection with the sale. The plaintiff does not contend that the map was inaccurate in any way. Although no time for performance was specified in the contract, the law presumes that it would be performed within a reasonable time. *Benassi* v. *Harris,* 147 Conn. 451, 458, 162 A.2d 521 (1960).

as its nature will permit. Ordinarily, although not necessarily, this is the market value of the property taken. But the question of what is just compensation is an equitable one rather than a strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken." (Citations omitted.) *Colaluca* v. *Ives,* 150 Conn. 521, 530, 191 A.2d 340 (1963).

An issue similar to the present issue was addressed by our Supreme Court in *Colaluca* v. *Ives,* supra. There, the plaintiff had purchased land from the city of Hartford for $35,000 at a public auction. The deed conveying the land contained an option covenant allowing the city or the state of Connecticut to repurchase the parcel for $35,000 within twenty years from the time of sale if the city or state should require the land for a public purpose. Five years later, the state highway commissioner decided to acquire the land for use in a highway project. He instituted condemnation proceedings, which he was later allowed to abandon after bringing a separate suit for specific performance of the option. Judgment was rendered for the commissioner in both actions. On appeal, the plaintiff claimed, inter alia, that the trial court erred in allowing the commissioner to abandon the condemnation proceedings. She further claimed, as does the plaintiff in this case, that once the commissioner had initiated the condemnation proceedings, she was entitled to the full extent of damages allowable in a condemnation procedure.

The Supreme Court addressed this latter claim by determining the amount of damages to which the plaintiff would have been entitled had the commissioner proceeded in a condemnation action rather than in an action for specific performance. The court, in determining the effect of the option contract in the condemnation proceeding, stated: "Had the property not been

'taken' under the condemnation procedure, the plaintiff would have been under an obligation, for the reasons already stated, to convey the property to the commissioner, on sixty days' notice, for $35,000 in accordance with the option covenant. Consequently, even if the property was 'taken' by the commissioner, her damages would be, and could be, only $35,000, since that was the full value of her interest in the property at the time of the claimed taking. See *Stevens* v. *Norfolk,* 46 Conn. 227, 230 [1878]; *McGowan* v. *Milford,* 104 Conn. 452, 456, 133 A. 570 [1926]." Id., 530–31.

We find this reasoning to be persuasive under the facts in this case. Like the plaintiff in *Colaluca* v. *Ives,* supra, the plaintiff here was bound by a contractual agreement to convey a parcel to the highway commissioner for a fixed sum. Because of this agreement, his damages were limited to the amount of the contract "since that was the full value of [his] interest in the property at the time of the claimed taking. . . . Any greater sum would be, not just compensation, but an unwarranted gift of public funds to a private individual." Id., 531.

The plaintiff claims that when the commissioner chose to condemn the land pursuant to General Statutes § 13a-73 (b) rather than institute a suit for specific performance to enforce the sales contract, he made an election of remedies that precluded him from asserting any rights he may have had in the property under the sales contract. We note that this claim is inconsistent with the reasoning of the Supreme Court in *Colaluca* v. *Ives,* supra. There, the Supreme Court ruled that in a condemnation proceeding, the plaintiff's interest in land under contract to the state was limited to the price of the contract. Implicit in this reasoning is the conclusion that the state

does not waive or abandon its contractual rights in a parcel merely by instituting a condemnation action for that parcel.

Even if we were to find that the doctrine of election of remedies had some colorable relevance to this issue, we would not apply it under the specific facts and circumstances of this case. The doctrine of election of remedies is equitable in nature, and its purpose is not to prevent recourse to any remedy, but to prevent double redress for a single wrong. 25 Am. Jur. 2d, Election of Remedies § 1; see also *National Transportation Co.* v. *Toquet,* 123 Conn. 468, 479, 196 A. 344 (1937). Here, where the commissioner instituted the condemnation action only because of the plaintiff's breach of contract, it would be inequitable to apply the doctrine of election of remedies to benefit the breaching party.

There is no error.

In this opinion the other judges concurred.