[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in this action challenges the Defendant's (Commissioner of the Department of Public Health) imposition of a civil penalty for her operation of a family day care home without a license.[1]
The Plaintiff had formerly held a family day care home license. The Defendant revoked such license on February 18, 1993. The Plaintiff appealed the revocation and continued to operate her day care under a stay.[2] The stay was eventually terminated by court order (Koletsky, J.) of December 23, 1994, effective January 10, 1995. The Plaintiff was personally present when such order terminating the stay was entered. The Plaintiff continued to operate her family day care home without a license from January 10, 1995, through and including October 20, 1995; a total of 201 days. (The day care was not in operation on holidays or weekends.)
Following the termination of the stay, the Defendant's staff observed the operation of the Plaintiff's unlicensed day care on February 3, 1995, February 6, 1995, February 15, 1995, and August 2, 1995.
The Defendant, on August 7, 1995, commenced a civil action pursuant to General Statutes § 19a-87d seeking a temporary and permanent injunction against the Plaintiff's operation of her unlicensed day care home. An injunction was granted against such activity by the Plaintiff by order of September 11, 1995 (O'Neill, J.).[3]
The Defendant, pursuant to General Statutes § 19a-87c, notified the Plaintiff on September 20, 1995, that it was proposing to impose a civil penalty against her for operating her family day care home without a license. The notification further advised Plaintiff that the proposed CT Page 5366 fine was a total of $17,400 for each weekday between January 10, 1995, and September 11, 1995; and $100 a day for each additional day that she violated General Statutes § 19a-87b. Plaintiff requested a hearing and a hearing was scheduled and held on January 25, 1996.[4]
The hearing officer, in a thirteen page decision dated May 13, 1996, found that the Plaintiff had operated a family day care home in violation of § 19a-87b for 201 days and fined her $20,100 ($100 per day) pursuant to § 19a-87c. The Plaintiff appeals this decision pursuant to General Statutes § 4-183 of the Uniform Administrative Procedures Act.
Plaintiff does not challenge the facts but raises six legal and equitable claims as follows: 1) the civil injunction action under § 19a-87d evidences an election of remedies, which precludes pursuit of the civil penalty under § 19a-87c; 2) unconstitutional double jeopardy; 3) laches; 4) unconstitutional excessive fine; 5) equitable estoppel and 6) unclean hands/mitigation of damages.
In addition the Plaintiff asserts that the notice of the proposed penalty precludes the $20,100 fine. Section19a-87c provides that the notice of a proposed penalty should include "(3) a statement of the maximum civil penalty which may be imposed." The September 20, 1995, notice referred to a $17,400 fine through September 11, 1991, and $100 a day thereafter. This notice complied with the statutory direction and supported the ultimate fine of $20,100 or $100 for each day she operated without a license.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that he suffered "material prejudice as a result of this alleged procedural deficiency." Jutkowitz v.CT Page 5367Department of Health Services, 220 Conn. 86, 94 (1991).
Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public Utility Control, 219 Conn. 51,57-58 (1991). Similarly, "[w]ith regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St. Raphael v. Commission on Hospitals Health Care, 182 Conn. 314, 318 (1980).
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166 through 4-189), and the scope of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotation marks omitted.) Board ofEducation v. Freedom of Information Commission,208 Conn. 442, 452 (1988).
Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion."United Parcel Service, Inc. v. Administrator, UnemploymentCompensation Act, 209 Conn. 381, 385 (1988).
In support of the election of remedies theory three readily distinguishable cases are cited. Audubon ParkingAssociates Ltd. Partnership v. Barclay Stables, Inc.,
CT Page 5368225 Conn. 804 (1993), involved a rejection of the election of remedies claim and an allowance of a party's right to proceed to enforce a lease and/or a settlement agreement. The court noted at 225 Conn. 809 n. 6:
 The doctrine of election of remedies is equitable in nature and "is largely a survival from the formulary procedure of the common law which necessarily demanded consistency as an end in itself; [the] doctrine does not entirely accord with the modern conception of procedure which sacrifices consistency so far as is necessary to the attainment of substantial justice; and . . . the doctrine is a harsh one not to be extended.'
(Internal quotation marks omitted.) National Transportation Co. v. Toquet, 123 Conn. 468, 479, 196 A. 344 (1937). The doctrine is not intended to prevent recourse to any remedy, but to prevent double redress for a single wrong. 25 Am.Jur.2d, Election of Remedies § 1; see also National Transportation Co., v. Toquet, supra; DeLucia v. Burns, 11 Conn. App. 439, 527 A.2d 1234, cert. denied, 205 Conn. 803, 531 A.2d 935 (1987). (Emphasis added.)
The other cited cases DeLucia v. Burns,11 Conn. App. 439, cert. denied, 205 Conn. 803 (1987), and Whalen v. Ives,37 Conn. App. 7, 13-14 (1995), are of no aid to the Plaintiff. In DeLucia v. Burns the court specifically rejected the election claim as to the Commissioner of Transportation. The court noted at 11 Conn. App. 439, 447:
 Even if we were to find the doctrine of election of remedies had some colorable relevance to this issue, we would not apply it under the specific facts of this case. The doctrine of election of remedies is equitable in nature and its purpose is not to prevent recourse to any remedy, but to prevent double redress for a single wrong. 25 Am.Jur.2d, Election of Remedies § 1, see also National Transportation Co. v. Toquet, 123 Conn. 468, 479 (1937).
 Whalen v. Ives involved the application of Practice Book rules §§ 376 and 363A to a defaulted party. A CT Page 5369 defaulted defendant could not invoke a conditional discretionary reopening of a default under § 376; fail to comply and then proceed under 363A on the same default. Election of remedies is not discussed in such decision.
This factual scenario demonstrates why the Defendant needs multiple remedial tools. The Defendant needed the full coercive contempt powers of the Superior Court to restrain the Plaintiff from violating the law. The injunction was addressed to her continuing and prospective illegal conduct. The enforcement procedure under § 19a-87c
addressed the specific violations which had occurred.
The contempt finding and fine were to address Plaintiff's undermining the dignity and authority of the Superior Court. McClain v. Robinson, 189 Conn. 663, 666
(1983); State v. Ullman, 230 Conn. 698, 707 (1994). Plaintiff does not allege that the fine was paid to or in any way benefitted [benefited] the Defendant. Defying the court injunction is a separate offense from the illegal operation of an unlicensed day care facility.
The distinct nature of the contempt of the court order also defeats Plaintiff's double jeopardy claim. The Commissioner was vindicating the State's interest in preventing the operation of unlicensed day care facilities by fining the Plaintiff. Judge O'Neill in fining the Plaintiff was vindicating the authority of Superior Court orders. See generally State v. Hickam, 235 Conn. 614 (1995) and State v. Santiago, 240 Conn. 97 (1997).
The Plaintiff's laches argument must overcome a reluctance by courts to apply laches to the government.West Hartford v. Gelinas, 18 Conn. App. 688, 690 (1989);West Hartford v. Rechel, 190 Conn. 114, 120 (1983); Blancov. Darien, 157 Conn. 548, 556 (1969).
Plaintiff cites no authority for the proposition that a seven month delay would invoke laches. Plaintiff also fails to demonstrate prejudice to her from the delay. Plaintiff was personally aware that her license was suspended, the potential penalty was clearly in the statute and she persisted in her operations until under court injunction and contempt citation. For the prejudice required to invoke the doctrine of laches see Donahue v. C.N. Flagg Co.,
CT Page 5370181 Conn. 101 (1980); Freidlander v. Freidlander, 191 Conn. 81, 85
(1983).
The challenge to the fine as constitutionally excessive is similarly unavailing. The fine represented the approximate amount of Plaintiff income from the day care operation. The Plaintiff charged $30 a day or $125 a week per child and had several children in attendance. (R. 190-218, 38-58.) The fine was also specifically authorized by the statute, § 19a-87c(a).
The Plaintiff has no authority which suggests that such a fine, expressly authorized and in fact related to the benefit obtained from the illegal activity, is constitutionally defective.
The Plaintiff equitable arguments of estoppel and unclean hands or unsupported by any case authority. Estoppel against a government agency must meet the test set forth in Kimberly-Clark Corporation v. Dubno, 204 Conn. 137,148 (1987).
 In addition, estoppel against a public agency is limited and may be invoked; (1) only with great caution; (2) only when the action in question is induced by an agent having authority in such matters; (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency.
The Plaintiff is hardly in a position to claim oppression when she has persisted in a refusal to recognize the State's interest and authority to license family day care home facilities. Her loss of her license was brought about by her refusal to permit an inspection of the facility during operating hours. She refused to comply with conditions of a stay which permitted her operation during her appeal. She ignored the court order terminating the stay and initially an injunction, against her operation of the unlicensed home day care.
The amount of the fine was clearly a matter of discretion with the Commissioner, in that § 19a-87c(a) authorizes a fine of $100 per day of operation without a license. The standard of judicial review requires that "an CT Page 5371 agency's factual and discretionary determinations are to be accorded considerable weight by the courts." Board ofAdministration v. Bridgeport Community Television Co.,168 Conn. 294, 298-99 (1975); Connecticut Hospital Assn. Inc. v.Commission on Hospital and Health Care, 200, 133, 140 (1986); State Medical Society v. Board of Examiners inPodiatry, 208 Conn. 709, 777 (1988).
Plaintiff perhaps wishes she lived in a world where she was free to pursue her commercial enterprises without government interference. However, this is a society in which the health and safety of young children justify state inspection and licensure. A civil society must continue to require compliance with the law, and impose consequences for violations.
The Plaintiff's clean hands claim is totally spurious in view of the requirement that one who seeks equity must do equity. In view of Plaintiff's violation of the law including specific court orders; equity is unavailable.
The Appeal is dismissed.
Robert F. McWeeny, J.