[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff home owner Joseph Dornfried's suit against defendant home improvement contractor, Michael Granquist, and his limited liability company, Prestige Kitchens LLC, was tried to the court on March 11-12, 2003. The plaintiff's complaint has five counts: the first claims a breach of contract, the second, negligence, the third, fraud, and the fourth, a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). The fifth count seeks to "pierce the corporate veil" so that any liability of Prestige is imposed upon Granquist individually.
After hearing, the following facts are found:
1. On January 30, 1999, the plaintiff and the defendant Prestige entered into a contract for a variety of cabinet and woodworking jobs to be done at the plaintiff's home being constructed in Berlin, Connecticut.
2. The contract price was set at $17,500, with $12,250 paid with signing, $4,375 to be paid one week before delivery and $875 to be paid on installation.
3. The contract set an estimated delivery date of May 1, 1999.
4. The contract provided that the cabinets would be made of birdseye maple. It also provided that "it must be expected a degree of grain and color variation will exist on all nature woods. These characteristics of nature's work cannot be considered defects and [Prestige] will not be responsible for these variations."
5. The additional specifications attached to the contract indicate, among other things, that the cabinets were to have "crown moldings." In the breakfast bar, there was to be an enclosed bookcase. There were to be "roll-out" drawers on a food pantry and other locations in the kitchen. There was to be a "baking peninsula" with mixer cabinet in the middle. CT Page 3964-f There was to be an island with two thirty-inch ovens built into the center of the island. The island also included a spice and knife drawer. In the butler's pantry there was to be a center panel of the upper cabinets with glass shelving. In the family room there was to be built-ins on either side of the fire place. There were additional sketches drawn up by the parties both at the time of entering the contract and periodically thereafter which tried to give more specificity to the general list of items attached to the contract.
6. The contract was signed by the plaintiff and defendant Granquist as "manager."
7. There were delays in construction of the home that led to an agreed delay in the completion by Prestige through September 1999.
8. In addition a controversy developed over the provision in the contract calling for two ovens at the center of the kitchen island. While the parties disputed the issue, the court finds that the plaintiff provided Granquist with the specifications for the ovens and the "cooktop" in January 1999. Granquist, in constructing cabinet "boxes," erroneously did not leave enough space below the island so that both ovens would fit in the center, even though he had been supplied with measurements. This subsequently led to a re-design of the cabinets and other ordered items in the kitchen. Granquist's mistake had the consequence of further delaying the project as cabinets had to be re-designed to fit the new re-configuration.
9. The plaintiff paid the second payment due of $4,375 in September 1999.
10. Subsequent to September 1999, citing a variety of problems and making a series of excuses, Granquist did not appear at the plaintiff's home to continue work under the agreed contract.
11. The plaintiff demanded that Granquist acting on behalf of Prestige complete the outstanding work in a March 3, 2000 letter. Granquist did some work on March 8, 2000. In a letter of March 15, 2000, the plaintiff again wrote to Granquist listing the incomplete areas and advising that he was contemplating replacing Prestige as his contractor. Granquist did not reply to this letter and has never returned to the premises. The plaintiff did not make his last payment of $875 due under the contract.
12. Among other things the following items deviated from the bargained-for result under the contract: At least one-third of the cabinets were not delivered, some of the cabinets do not match at all the CT Page 3964-g sample of birds-eye maple, the mixer cabinet was not completed as promised, pine was used on the crown molding, the bookcase was not completed, the toe-kicks were not completed, the drawers were not completed or improperly installed, and the built-in units were not delivered.
13. The plaintiff subsequently hired Beautiful Cabinets of East Berlin to complete the work under the Prestige contract at a cost of $20,785.
14. The invoice prepared by Beautiful Cabinets set forth, among other things, the following tasks: Repair work done to unfinished kitchen job, replace all doors and draw fronts with solid birdseye wood panels and clear maple frames; make twenty-one new pullout shelves; all toe kicks to have one-quarter maple plywood installed; make and install five new draw boxes; replace all molding in kitchen with maple wood; make six wood shelves in wet bar, one with glass rack; rebuild bookcase and add four adjustable shelves; one sliver draw repaired; rebuild end of island cabinet. Exhibit AA.
15. Granquist is the sole member of Prestige Kitchens, LLC. Granquist wrote checks from the account of Prestige, but his accountant treated these personal payments as salary and reported them to the Internal Revenue Service.
Based upon the foregoing facts, the court concludes that Prestige was in default of the contract entered into between it and the plaintiff. "One who has contracted to construct a specified product can commit a breach of his contract either by delay in completion or by defective construction or by repudiation or abandonment." 11 Corbin on Contracts, p. 421. See also Pagano v. Maniscalco, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. CV 92 040975 (June 2, 1994, Curran, J.) (project was done in an unworkmanlike manner, constituting a breach of contract). Thus the plaintiff has prevailed against the defendant Prestige on the first count of his complaint. He has also prevailed on the second count against Prestige similarly alleging negligence in workmanship. See Franco v. Premo, Superior Court, judicial district of New Britain, Docket No. CV 97 0478010 (May 5, 1999, Kremski, J.) (negligent reconstruction of gasoline station).
The court must now consider the appropriate damages to be awarded the plaintiff on counts one and two. In general, the plaintiff is entitled to damages that cover the cost of correction by a third party. Brookfieldv. Greenridge, Inc., 177 Conn. 527, 537 (1979). However, since the injured plaintiff should receive solely the benefit of the bargain, Leev. Harris, 85 Conn. 212, 214 (1912), he should not retain anything "in CT Page 3964-h excess of that sum which compensates him for the loss of his bargain."Argentinis v. Gould, 219 Conn. 151, 157 (1991). Specifically the plaintiff must subtract from his costs to correct any amount unpaid under the contract with Prestige. Argentinis, supra; Carlin v. Comstock,38 Conn. Sup. 424, 425, n. 1 (1982). There should also be a subtraction for the value of any materials that might have been used by Beautiful Cabinets. In addition "[i]f in the course of making repairs the owner elects to adopt a more expensive design, the recovery should be limited to what would have been the reasonable cost of repairing according to theoriginal design." (Emphasis added.) Temple Beth Sholom and Jewish CenterInc. v. Thyne Construction Corp., 399 So.2d 525, 526 (Fla.App. 1981).
Following these principles, the court recognizes that the plaintiff paid $20,785 to Beautiful Cabinets. The court subtracts $875 for the outstanding amount due to Prestige. The court also subtracts $2,000 for the boxes already in place prepared by Prestige that Beautiful was able to use. The court subtracts $1,000 from the Beautiful Cabinet price to cover additional work not contemplated by the original contract, such as replacing the glass shelves with wood in one cabinet and replacing every cabinet front made by Prestige and delivered to the premises by Granquist. The court adds $600 for the built-in cabinets, promised under the Prestige contract. The total amount of damages is thus found to be $17,510.
The court rejects the plaintiff's claims on the remaining counts. The plaintiff has not met his burden of proof on count three, alleging fraud. The court in reaching this conclusion concurs in the ruling given by Judge Shapiro on March 13, 2001, when considering the fraud claim at the prejudgment remedy proceeding:
The elements comprising an action in fraud or fraudulent misrepresentation are that: (1) a false representation was made as a statement of fact: (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury . . . Statewide Grievance Committee v. Egbarin, 61 Conn. App. 445,454 . . .
The party asserting such a cause of action must prove the existence of the first three of these elements by a standard higher than the usual fair preponderance of the evidence, which higher standard we have described as clear and satisfactory or clear, precise and unequivocal . . . Barbara Weisman, Trustee v. Kaspar, 233 Conn. 531, 539, 661 A.2d 530
(1995); see Citino v. Redevelopment Agency, 51 Conn. App. 262, 270,721 A.2d 1197 (1998) ("clear and convincing" is the standard of proof). CT Page 3964-i . .
As noted above, the plaintiff's fraud claim is premised on the allegation that the defendants knew or should have known, when they made representations about the quality of materials that could not supply or provide the same. A representation about a promise to do something in the future, when linked with a present intention not to do it, is a false representation. Kavarco v. T.J.E., Inc., 2 Conn. App. 294, 300,478 A.2d 257 (1984).
The evidence at the hearing was focused on the materials and workmanship which were eventually provided, not on the defendants' knowledge at the contract's inception. In effect, the plaintiff asks the court to infer, based on the results, that there was fraud at the beginning. Such an inference is not warranted by the proof presented.
See pages 9-10 prior ruling. (Internal quotation marks omitted). Nothing submitted at trial alters the accuracy of this prior decision.
The fourth count alleges a violation of CUTPA. But CUTPA does not apply to situations where a contractor merely did not perform in a professional manner. Rumbin v. Baez, 52 Conn. App. 487 (1999) (psychologist); Ferrignov. Pep Boys, 47 Conn. Sup. 580, 582 (2003) ("Our Supreme Court has explained that the unworkmanlike performance of a contract does not, in and of itself, amount to a CUTPA violation . . . A tire seller who does a poor job of installing new tires . . . [is not liable for deceptive practices under CUTPA]"). The plaintiff does not claim any specific violations of the Home Improvement Act, General Statutes § 20-418 et seq. Cf. Tang v. Bou-Fakhreddine, 75 Conn. App. 334 (2003) (at least nominal damages under CUTPA where the defendant was defaulted for violation of the Home Improvement Act).
Finally the plaintiff did not present sufficient evidence to "pierce the corporate veil" so that Granquist might be held personally liable for Prestige's actions. The allegation that the plaintiff supposed that he was entering into a contract with Granquist was thoroughly discussed by Judge Shapiro, see pp. 4-8, prior ruling. As the judge summarized at page 7:
The contract is clear and unambiguous. After defining the contracting entity as a limited liability company on the first page through the "LLC" contract simply references "Prestige Kitchens" thereafter. Then, Granquist signed as "manager" reiterating that the limited liability form of business was being utilized. The evidence before the court . . . establishes that the parties to the contract were Prestige Kitchens, LLC CT Page 3964-j and the plaintiff.
In addition the plaintiff did not prove that the use of the limited liability company funds by Granquist was sufficient to pierce the veil. Granquist's CPA gave an adequate explanation for that practice. Since the plaintiff did not prove that Prestige was established by Granquist to accomplish a fraud, the court cannot find that the corporate veil should be pierced. Angelo Tomasso, Inc. v. Armor Construction Paving,Inc., 187 Conn. 544, 557 (1982).
The court concludes that judgment should enter for the plaintiff against Prestige Kitchens, LLC only in the amount of $17,510.
BY THE COURT
Henry S. Cohn, J. CT Page 3964-k